Good morning, Justices. Brian Gaffney for Appellants, Environmental Protection Information Center and Forest Issues Group. I'd like to reserve five minutes, if I may, for rebuttal, if any. This case involves the interplay between the Freedom of Information Act, FOIA, and the Agricultural Adjustment Act of 1938. The main issues in this case are, one, is 7 U.S.C. 1387, the Agricultural Adjustment Act, with its express prohibition against affecting the power to dispose of materials under any other provision of law, a statute specifically providing for setting the level of fees? And two, what is the relationship between FOIA section A4A3, fee waivers, and A4A6? The importance of this case is that, in two ways, this is a case of first impression. No agency has ever claimed that 7 U.S.C. 1387 is a statute specifically setting the level of fees such that it qualifies as a FOIA A4A6 statute. And two, the trial court's decision was the first time a court has held that FOIA A4A6 abrogates fee waivers. The foundation of the Forest Service argument is that 7 U.S.C. 1387 is, despite the fact that administratively they determined that the requested GIS data. Why don't you just use, in just a couple of minutes, tell us on a practical basis how this is affecting people? Because there were in the briefs mention of anywhere, I don't know, from a small amount up to $4,000. And so just the practical world application is people are coming in wanting to look at records and how much it's costing and just sort of tell me. And then the agencies want to recoup some money so that they don't have to pay for this? Both of the appellants prior to the FOIA request here had been requesting under FOIA GIS data and have been receiving that data and having their fee waivers granted. They use that data in order to comment on plans by the United States Forest Service for national forests. They do this on a continual basis. In 2002, approximately three years ago, both the group in Humboldt County Environmental Protection Information Center and the group in the Sierra Nevada Forest Issues Group submitted another set of FOIA requests with FOIA fee waiver requests, and the agency denied the fee waivers. Now, the effect of that is that not only did they not get those documents, because as hand-to-mouth nonprofit groups, they don't have the $350 to pay, but not only that, the groups have stopped submitting FOIA requests for this data. And so now, when they comment to the U.S. Forest Service, they're deprived of the information the agency has in order to comment on behalf of the public. This is happening not only with these two particular groups, but as the brief of amici point out, is happening throughout the region. I think the groups that provided the amici were from Idaho and perhaps Washington State as well. So that's the practical effect. Anne, to you. And then the practical effect, I guess, to the other side is if someone's claiming that they have to pay $4,000, that's a lot of work that an agency has to do to copy things so that people can just look through, right? Here it's slightly different because when the FOIA was amended in 1996 under the Electronic Freedom of Information Act, records were expanded to include electronic data. And so this is actually more than just hard paper copies. This is electronic data. It provides three-dimensional geospatial information. And so the harm to the agency is, I assume, that they would have to make copies onto CD-ROMs, which in many cases, including these appellants, was provided, and click a button and copy it onto a CD-ROM and then mail it. Now, in the context of that is the fact that Congress has dictated that agencies shall provide fee waivers when they find, as here, that the requesters meet the criteria. And the criteria for a fee waiver, as the Court knows, is it's a noncommercial interest and that it's going to advance the public interest because it's going to significantly contribute to public understanding. Okay. Well, I understand here we have to, anyway, whatever the applicable law is, we're going to be doing the interpretation, so we're going to consider whatever's appropriate. But the OMB guidelines that we're talking about here, was that in front of the district court? Yes, it was. Okay. So the district court considered that argument as well there? The district court didn't address it in his decision. I believe the position that was taken was that statutes are clear on their face, and thus the court need not look to any tools of statutory interpretation. Moreover, under A4, A3 fee waivers, Congress has specifically said that review is de novo, and so this Court's review is de novo as well. Right. I understand that. Okay. Go ahead. Are there other questions you'd like me to address, or shall I continue? Go ahead. Okay. The argument there of the Forest Service that is twofold, or our opposition is twofold. One, 1387 expressly prohibits itself from being used as such a statute specifically providing fees. Congress uses the term shall not affect the power. The other part of our argument is that contrary to the Forest Service position, the Forest Service does not have discretion as to whether or not to comply with FOIA or provide the documents under 1387. Under our first argument of an express prohibition, the Office of Management and Budget, which has been given a privileged position by Congress in FOIA because it says that all other agency regulations must conform to OMB guidelines. OMB published a rule that specifically stated, after this A4, A6 was added in 1986 to FOIA, that says that, quote, guidance makes it clear that a qualifying statute must require and not merely permit an agency to establish fees for particular records. And our position is that the statute, 1387, does not require or permit. It expressly prohibits. Secondly, the service's own regulations contradict their position here. In 1997, they published a final rule, and that final rule states that costs under 7 U.S.C. 1387, quote, do not affect accessibility under the Freedom of Information Act. There's been no rule modifying this, proposed or otherwise, and so the agency's position here is we consider it an abuse of discretion, but clearly it's entitled to no deference. Moreover, none of the statutes that OMB, Congress in its legislative history, or the courts have found qualify as A4, 6 statutes because they specifically provide, none of them contain the exemption language here that such statutes shall not affect the power to dispose under any other statute. Now, regarding the Forest Service argument that somehow they have some sort of discretionary power, as a preliminary matter, it's important to point out that both the statute and this court in Friends of Coast Fork stated that the court's review is limited to the record before the agency and that post hoc rationalizations are prohibited. Well, this argument that somehow it has discretion to choose was never raised administratively and so is not properly before the court. But even if it were, the language in 7 U.S.C. 1387, which says shall not affect the power, is contrasted to FOIA's mandatory language of shall, that the agency shall provide fee waivers when, as here, the criteria are met. Moreover, two years ago in TPS versus Department of Defense, the court held that in regards to computer data, that the purpose of Congress was to expand rather than narrow the agency's obligations under FOIA. Also, the services position is, again, contrary to their own regulations. Nothing in their regulations, nothing in the Forest Service manual allows the agency a choice of whether to comply with FOIA or creates an exemption from FOIA for fee waivers for computer GIS data. Instead, the regs and the Forest Service manual continually reiterate availability of fee waivers and state the specific criteria that all data, including computer data, must go through in order to get a fee waiver. The second part of our argument is that A-4-6 does not abrogate A-4-3 fee waivers. OMB, again, in a final rule, concluded that, quote, the legislative history relating to FOIA section A-4-A-6 is unambiguous in stating that it is not intended to change existing law. When this provision, A-4-6, was added in 1986, fee waivers had been part of the statute since 1974, and so the existing law that it's referring to is fee waivers. Moreover, the congressional record is clear. Both the House and the Senate in the report state that this section shall not change current law. The House goes on to explain that the new language simply clarifies that statutes setting specific alternate basis for recovering dissemination costs can supersede FOIA fees and does not mention fee waivers. This Court, in repeated published decisions, including McClellan, have stated that FOIA fee waivers are to be liberally construed in favor of noncommercial requesters and that the main purpose of the statute is to remove roadblocks being used by agency to deny waivers. Congress, again in 2003, took it upon itself to publish a FOIA handbook, and that FOIA handbook states that decisions about fees charged to a requester are, quote, separate and different than decisions about fee waivers. The bottom line is that we should reverse and simply state it. For what reason? You should reverse because the statute and the regulations are clear that 7 U.S.C. 1387 is not a statute specifically providing for setting the level of fees, that FOIA section A-4-6 does not abrogate fee waivers under A-4-3, and as this Court did in McClellan, because the agency's reasons are inadequate. Right, but 1387 comes after all of this, right? Timewise or from a logical? Timewise. 1387 was the Agricultural Adjustment Act from 1938. All right, but the latest that we're talking about is 1999, right? It was amended in 99. Okay. So we're talking about so I guess what I'm asking you to say is from the standpoint, you know, timewise you've got, and the OMB guidelines are before 1999 too, correct? The OMB guidelines, I believe there's the one from 1987 interpreting the A-4-6 FOIA, and there's one from 1997 regarding the interpretation of costs under 1387 have to comply with the Freedom of Information Act. All right, well, we have to do statutory construction here, correct? Yes. All right, and this is not an easy case, and while both of you are probably going to say that it is, it isn't that easy. So tell us how in doing the statutory construction, and I've told you the relative times, what do we have to first say about 1387 to get to your other arguments? The statute's clear on its face that the 1387 shall not affect the power of the agency to dispose. That's an express prohibition. There's nothing about discretion because FOIA states that fee waivers shall be granted once the agency determines that the requester has met the criteria. That to the extent that there is a conflict between the statutes, that under statutory construction the statutes are not read as irreconcilable, but are read in order to harmonize the two statutes whenever possible, and that the only time when a statutory provision is deleted by another statute is when it's intended to cover the entire field, and it speaks directly to the statutory provision. And 1387, even as amended in 1999, does not do either one of those things. And so for the government to prevail from your perspective, what would 1387 have had to say for them to be successful? 1387 would have to not include the provision that this section shall not affect the power of the secretary to dispose of records under any other statute. When the court looks at the legislative history, OMB, and Oglesby out of the D.C. Circuit, every time that a court has found that a statute specifically sets the level of fees, none of those statutes, not the one from the government printing office, the National Medical Library, et cetera, include this statement about this section shall not affect the power to dispose. All right. Do you want to reserve the balance? I do reserve the balance. Thank you. May it please the Court. My name is Shanahi Coleman, and I represent the Forest Service. Good morning. Good morning. Section A4A6 states that nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records. Section A4A6 applies to the entire subparagraph, which includes fee waiver provisions. The word nothing in that statute unambiguously allows no exception. The plaintiffs in this case are seeking to limit Section A4A6 in a manner that is not provided by the clear and unambiguous statute. Citing to the legislative history, the plaintiffs argue that the fee waiver provision supersedes fee-setting statutes, but the statute says just the opposite. The statute is controlling here. There is no ambiguity, and there is no need to refer to the legislative history. Because the GIS records that the plaintiffs have requested are made available pursuant to Section 1387 for a fee, the USDA is not required to produce this information free of charge under the fee waiver provision of FOIA. The Court raised to the plaintiffs a practical application question with respect to the amount of money that is involved here. The record here shows that the charge for the first request was $350, $56 for the second request, $56 for the third request, and $71 for the last request. And that's at the supplemental excerpts of record at pages 193-194, 209-210, 224-225, and 234-236. And the Court also pointed out that to the extent that the practical application involves expenditure of funds, that it would be that you would anticipate that the government's position, and you are correct in your anticipation that the government takes the position that is burdensome upon the government to bear those fees, and that there is no provision of law requiring that the government bear those fees in this context. I also wanted to comment with respect to the assertion that was made by the plaintiffs that these requests are being made by agencies that are hand-to-mouth public interest agencies. What we're seeing in the brief is that the plaintiffs seem to be trying to make the argument that affordability equals accessibility, and the law does not provide for that sort of an interpretation. The fee waivers are not granted based upon financial need. It's quite possible that some of these private agencies have quite a bit of money and may be more in these tough economic times, if they're good at fundraising, they may be more able to pay for these records and for these requests than the government's able to. So whether the agencies are hand-to-mouth is not an issue. When the Court is looking to whether someone qualifies for a fee waiver, the inquiry is whether the request is in the public interest and whether it lends itself to more understanding of government operations, that sort of thing. So the issue of allegedly being hand-to-mouth is certainly not an issue here. So they don't have to put down how much money they take in or anything along those lines, but they do have to satisfy a level that they're doing this for the public interest as opposed to that they're just curious. Exactly, Your Honor. Does the Office of Management and Budget have anything to do with our should anything that came from the Office of Management and Budget enter into our consideration as we decide who wins in this case? No, Your Honor. It was not. Nothing from the Office of Management and Budget was part of the district court decision. The district court looked to the plain and unambiguous wording of the statute and decided from there. If this court were to look outside of the statute and were to reverse this case, it would be the first case of its kind and would have far-reaching impact with respect to the public bearing the cost of reproducing this information for private groups. I understood the appellant to say that you're the only people that are charging. You're saying this would be the first time that everyone's saying this is you're both taking different positions on what's the truth. I mean, they're saying they haven't been charged before by other people until you started charging. Your Honor, my understanding, which is based upon the record case, the Matthews case, there was a similar statute, the TIA statute, which did allow for charging, and my understanding is that government agencies may charge for certain documents. And also my understanding is that with respect to the purpose of the Freedom of Information Act, it was basically enacted so that there's not government secrecy and so that it's clear to the public the type of activities that the government is engaging in and that sort of thing. There are other documents that the government may have, including maps, geospatial information, other information that has its value not in the information that's contained there, but has its value in the amount of effort that was put into compiling that sort of information. When we're talking about this geospatial information, which is similar to maps, I mean, basically it takes us far afield of what FOIA was intended for to begin with at this point. I mean, perhaps instead of purchasing your map from Rand McNally or Thomas Brothers, you make a Freedom of Information Act request, and as a public interest organization, say that you get that information and that copying for free. This is not the purpose of FOIA. I'll tell you why I ask you about that. I understand, and you can correct me if I'm wrong, the guidelines make a difference as to whether the fees are discretionary or mandatory, the guidelines from the Office of Management and Budget. And in this case, the fees we're talking about are discretionary fees, aren't they? These fees are discretionary, correct. Section 1387 does provide that the secretary may charge for the records. Makes them discretionary. And if we would look at the Office of Budget and Management's guidelines, we would see that the regulations, for an exception, turn on whether they're discretionary or mandatory. And here they are discretionary. Is Your Honor referring to Section 1387? Yes. They are discretionary, correct. If there were funds available in the budget to provide for free dissemination of this information to private groups, then the secretary would have the discretion to allow that. However, the secretary has not done so under these circumstances. You talk about the statutes, and Judge Callahan says we've got to look at them and we've got to see what they say, but as we look at them, I don't know how we can ignore the Office of Management and Budget guidelines. And if we don't ignore them, then we would say that the exceptions would – I don't want to say would not. I don't want to say would not when I mean would. But since they are discretionary fees, then he has a right to get them without paying a fee, doesn't he? No, Your Honor. If the Congress had intended that if a statute provides for discretion, that in that case that statutes such as 1387 were not applicable, then that could have been included in Section A4-A6. It was not included. There was no limitation. And I'd also like to point out that with respect to the amounts that are being charged here and what is being charged for, the record shows that an individual who's requesting the GIS records is charged for supplies, materials, shipping and mailing charges, and labor costs directly associated with regenerating or reproducing this geospatial information. And so the discretion is necessary in order to be able to compensate for the cost of producing this information. And so what would, in your view, the bottom line of this Court's decision, what should it be? I know you want us to say we should affirm, but what would be the reasons? I would say, if I had to summarize, I would say that it should be affirmed because Section A4-A6 states nothing in the subparagraph shall supersede fees chargeable under a statute specifically providing for the setting of the level of fees for particular types of records. And that I would further say that Section 1387 is such a statute that specifically provides for the setting of levels of fees. And so what do we say about OMB's guidelines? With respect to the guidelines, I would say that they do not enter into the analysis here. They were not brought up. I don't remember that being an issue at the district court in this year. Well, except we can't, it's a Jenova review. So we can't, just because it wasn't brought up, we can't say they don't exist. We have to, we've got to consider what's applicable. So what I'm telling you is why doesn't, if the OMB's interpretation of FOIA is entitled to more deference than your perspective, then it seems that you lose. So you need to tell me why that's not true. With respect to the OMB guidelines, I would like to just emphasize that to the extent that they address discretion with respect to charging for documents, the discretion in this case is necessary in order for the agency to continue with its mission and to serve its mission. And if its resources are diverted to producing this information for private individuals, that that is very problematic. Well, I don't know that if the guidelines are consistent with the purposes of FOIA and they're applicable here, it seems to me that you lose. And so I've got to have a reason not to find those applicable. A legal reason. That's the... I know this is easy. I mean, this is a hard case. I guess, Your Honor, I would say that there's nothing in the guidelines, based upon my understanding, that negates the statutory provision of A4, A6, which says that nothing in the subparagraph would supersede the fees chargeable. And that there's been no finding that Section 1387 is defective based upon the discretion. All right. Anything else? Nothing else, Your Honor. Any further questions from the panel? Thank you. Justices, first off, there's no support that there's somehow some sort of burdensome criteria that needs to be applied here in the statutes or the regs. Secondly, the argument that somehow the documents need not be provided under a fee waiver because they're otherwise publicly available, that is contrary to the services on regulations. In their briefs, they cite 36 CFR 200.6 and argue that it provides them authority because it states that the Forest Service charges a fee for copies of records not generally made available but released pursuant to a FOIA request. What they fail to point out is that statement goes on to state that it references the regulations at 7 CFR Appendix A. is where the fee waiver is laid out in their own regulations and where the fee waiver criteria is laid out. And Appendix A also says that the fees specifically apply to computer data. Does anyone want to go directly to her argument? There's nothing in this she's saying since the statute. There's nothing. There are no fee waivers. Do you want to respond? Well, the argument's wrong for two reasons. One is that it has to be, both the courts and OMB and the legislative history had pointed out to some statutes that meet the criteria and some that don't. So some don't because they're too general. This one's got an express prohibition. Secondly, she wants to stress nothing, but she wants to avoid the fact that it says nothing in this statute affects fees chargeable. And our argument is, sure, nothing means nothing, but it has to do with fees chargeable and not fee waivers. And when we look at the legislative history, that A6 was not supposed to change existing law. Fee waivers had been on the books for 12 years at that point. Not only is it the OMB regulations, which the courts should look at, which they should, but also the services regulations in a final rule at 64 Federal Register 3395 that says that 7 U.S.C. 1387 quote shall not affect accessibility under the Freedom of Information Act. Accessibility under the Freedom of Information Act includes access to documents for noncommercial requesters. Here what the court should do is not only reverse, but as the court in McClellan did, because the agency's already determined that the requesters meet the fee waiver criteria, a full fee waiver should be granted and the document should be released forthwith with that fee waiver. Okay, thank you. All right, this matter will stand submitted. Before we, let's see.
judges: Farris, Tashima, Callahan